Chief Justice Boyee
delivered the Opinion of the Court.
At Natchez, on the 22d of March, 1818, William Boone, D. R. & J. Murray purchased of H. C. Jones a cargo of Fork and bacon, at the, price of six cents per pound, the boat in which it was, together with the cooking utensils being given in. The cargo was estimated at 37,000 pounds, but it was agreed that Boone and the Murrays should have the pork and bacon weighed as sold, of which they were to keep an account, and if the quantity turned out to be less than 37,000 pounds, Jones was to pay hack to them at the same rate for the deficiency, and if the quantity should be greater, they were to pay him for the surplus at the same rate; and a written agreement to this effect was executed by the parties, Boone and the Murrays immediately paid to Jones the price for the estimated quantity of 37,000 pounds, except 720 dollars, for which a bill of exchange was drawn by J. Murray upon D, R. Murray, and accepted by him. On this bill 400 dollars were paid, but the residue being unpaid, Jones brought suit at law, and recovered judgment therefor against the Murrays, they having made no defence.
They then filed their bill in chancery, in which, after stating the above facts, they allege, in substance, that on the pork and bacon being weighed, agreably to the contract between the parties, there were only 26,818 pounds making a deficiency of 10,182 pounds, amounting to 610 dollars 92 cents, at the price at which they purchased; and they charge that the pork and bacon, at the time" of the sale to them, was spoiled and injured to the amount of one half of the cargo. They snake Boone and Jones defendants, and pray for an injunction against the judgment at law, and a decree, for such further sum as may be due them, against Jones.
Boone in his answer admits the material allegations of the bill; confesses that he has not paid to *84 the complainant his proportion for the deficiency in the quantity of the pork and bacon, and alleges that he had retained it under an impression that they could not be compelled to pay therefor.
J ones5 answer
Deoreo of the Ciro’t, Court,
The guarantee of the quantify of a cargo docs not imply a warranty that the whole is sound; and so all may be taken into the account.
Jones in his answer admits the sale by him of the cargo of pork and bacon at the estimated quantity of 37,000 pounds; and that when weighed he was to be paid for the surplus if any, but denies that he was to make any deduction for a deficiency of quantity, and alleges the written contract to that effect was drawn cither by mistake or fraud. He denies that the cargo of pork and bacon was spoiled at the time of the sale, or if it was, that he knew it to be so, and alleges that Boone and the Murrays saw and examined the cargo for themselves, and purchased it upon their own judgment without warranty of its soundness.
The circuit court decreed the judgment at law to he perpetually enjoined; and that Jones should pay to the complainants the sum of 290 dollars 82 cents, with interest from the date of the contract, that being the amount of the deficiency, as supposed by that court, in the estimated quantity sold by Jones to Boone and the complainants, To that decree Jones has prosecuted this writ of error. There is no pretence for the assertion made by Jones in his answer, that he was not to he accountable for the deficiency in the estimated quantity of the cargo sold by him. The written contract is explicit upon this point, and the parol evidence, so far from contravening the written contract in this respect,fortifies and confirms it, and shows that it was drawn in strict conformity to the true intention of the parties.
But the deficiency for which he ought to account is not, we apprehend, as great as the circuit court assumed it to be. It is true that the witness, who sold out the cargo for the complainants, and kept an account of the weight of the parcels he sold, states the amount of that which he sold to be only 26,818 pounds, making the deficiency in the estimated quantity of the cargo sold by Jones to the complainants and Boone exactly what it was assumed to be by the circuit court; but the same witness states that there was from 1700 to 2000 wounds which was not *85 sold nor weighed, because it was so spoiled as to be unfit for market. Adding this to the quantity by the witness, > the deficiency in the estimated amount of the cargo sold by Jones, will be thereby reduced so much; and whether it ought to be so added or not, depends upon the question, whether Jones is responsible for the quality of the cargo. Some of the cargo is conceded by the complainants to have, been sound and of good quality at the time of their purchase, and whether that part of it which was afterwards discovered to be spoiled, was so at the time, of the purchase, is a matter of some doubt; but assuming it to be spoiled at that time, we should nevertheless be of opinion, that Jones was not responsible for its quality.
«if,on a sale there be neithe purchaser takes the tlNf i!,lt lus p 1'
The rule that, in sales of ways an jra„ plied wammí^'ethy^)1ccy g0m0) oniy applies to sales£?r con" wberoTprcjudiocensues, ant *° sale3 tUytomor"' chandizc.
The. evidence does not justify a conclusion, that he either undertook to warrant the quality of the cargo, or that he practised a deceit in selling it as sound and merchantable, when he knew it to be otherwise. In fact, there is no allegation in the bill to that effect. And the law is, that if, ,on a sale, there be neither a warranty nor deceit, the purchaser takes the thing at his peril. This is recognized as the rule of the common law, by a long series of decisions in the English courts, from the most ancient to the most modern, and it has been sanctioned by the repeated adjudications of the court.
Blackstone indeed says, that “ in contracts for provisions, it is always implied that they are wholesome;” Black. Com. 166. This may be true where provisions are sold for consumption, and anj prejudice ensues ; but the law is otherwise where they are sold to merchandize. This distinction is taken in the note to Fitzherbert’s Natura Brevium, 84, the only authority to which Blackstone refers. “ Note (says the writer) a diversity between selling corrupt wines to merchandize, for there an action on tbe case does not lie without warranty; otherwise, if it be for a tavern or victualler, if it prejudice any,” and for this the year book of the 19th Henry 6, is cited. In this case, the complainants were not tavern keepers, or victuallers, but merchants, and they purchased not for consumption, but for merchandize. There was, therefore, no implied warranty *86 on the part of Jones j and having made no express! warranty, and practised no deceit in the sale, he is not responsible for the quality of the cargo sold by him.
Wliure 'vendor agreed to account for wliatthe cargo might lack of the estimated quantity oil its being •veighed out by purchaser, any uncertainty in the purchaser’ll account ami evidence of the deficiency must be computed against hv,n.
Where, by an over estímete of the quailIily of a careo, purchaser over pays, aniiri' agreo.iH-iil that overplus or balance would be rerefuuded or paid? and on t bill gii eu in part, a judgment for a further sum is recovered, lie may have iiis bill for injunction, and to recover the overplus: on the principle ofsoloil- and doing complot n justice in one suit.
*86 It results, consequently, that the part of the cargo which was spoiled should be added to the part which was sold by the complainants.
There is an uncertainty in the estimate made by the witness of (he amount of the spoiled part of the cargo. The maximum of his estimate ought to be taken, namely 2000 lbs. not only because the complainants had undertaken to have it weighed and keep an account of it, and had failed to do so, but because, as they contracted to pay for an estimated quantity, they can only discharge themselves by showing the deficiency, and uncertainty or ambiguity in the proof of the deficiency, must be construed most strongly against them. Adding 2000 lbs. for the spoiled part of the cargo, to the amount which was sold by the complainants, will make the quantity of 28,818 lbs; and leave a deficiency of only 8,182 lbs in the estimated quantity of the cargo, .which, at six cents per pound, amounts to $4S0 92, and, of course, after deducting the sum remaining due on the bill of exchange, for which the judgment was recovered, there would remain a balance of only jgl60 92 due to the complainants, instead of the sum decreed by the circuit court,
But it is contended, on the part of Jones, that the remedy of the complainants was at law, and hot in equity, and that they are therefore entitled to no relief in this case.
.In what way the complainants could have had, or may still have their remedy at law, is not suggested, and we confess we are unable to perceive any, which, in our opinion, ought to exclude them from the aid of a court of equity. They might, perhaps, have defeated the remedy at law upon the bill of exchange, on the score of a failure of the consideration ; but that would not have been an adequate remedy, for they had already paid above the price of the actual quantity of the cargo of pork and bacon, more than the amount which remained due upon the bill, and for the balance they must have re *87 sorted to some other mode of redress, or have submitted to the loss of it. Their failure, therefore, to avail themselves of a remedy, thus partial, instead of excluding'them from the aid of a court of equity, ought rather to be considered as a reason for the interposition of that court, as well because the whole controversy may be thereby adjusted in one suit, as because the remedy afforded is more adequate to the demands of justice. If, however, they bad even paid the amount of the judgment upon zhe bill, they might, perhaps, in an action at law upon the written agreement for the purchase of the cargo, have recovered back the amount of the judgment, as well as the whole they had once paid for the cargo. But even admitting their right to do so, we cannot think they ought, on that ground, to be excluded from the aid of a court of equity.
Sot-off in equity — 1!)<: rulos st;ited.
Hoc 1 Monroe, the tillo in the i udex 2'tíssin i.
üriütv.dm for plaintiff: Haggin- for defendants.
Where there are mutual demands, a court of equity, though each of the parties might have a remedy at law, will often interpose to compel them to sot off the one demand against the other. It is not, indeed, in every case that this will be done. Where the demands are wholly unconnected, or where they are, or either of them is, founded upon tort, and sound in damages, which being indeterminate in their nature, can, upon the principles of our law, only be liquidated and ascertained by the verdict of a jury, a court of equity will not interpose to set off* one against the other, unless there be some extrinsic reason for doing so, as the insolvency of one of the parties, or the like. But where ihe demands, as in this case, arise out of the same transaction, and are intimately connected, and are founded, not upon tort, but upon contract, and the demands are determinate and certain, it is the invariable practice of a court of equity to set off one demand against the other, and consider the balance as the debt really duo.
The decree must be reversed with costs, and the cause bo remanded, that a decree may be entered according to this opinion.